Larry PRIMROSE, et al, Appellants,

v.

AMELIA LITTLE LEAGUE, Appellee.

No. 09-97-131 CV.

Court of Appeals of Texas, Beaumont.

Submitted Oct. 15, 1998.

Decided Feb. 25, 1999.

Jesse L. English, Law Office of Gilbert T. Adams, Silsbee, for appellant.

Michael J. Reviere, Benckenstein, Norvell & Nathan, Houston, Jacqueline M. Stroh, Benckenstein, Norvell & Nathan, Beaumont, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

EARL B. STOVER, Justice.

To address concerns raised in a motion for clarification and amendment submitted by Amelia Little League, we withdraw our opinion of February 18, 1999, and substitute the following in its place.

This appeal arises from a personal injury suit brought by Larry Primrose and his wife, Lona Primrose, individually and as next friend for Larry Primrose II, a minor, against Amelia Little League. A suit against Amelia Little League was also brought by Bobby Hampshire and his wife, Winnie Hampshire, individually and as next friend for Chad Hampshire, a minor. The Primroses sued Amelia Little League for negligence, gross negligence, malice, and fraud. The Hampshires sued the league on the grounds of tortious conduct, negligence, gross negligence, and malice. Amelia Little League filed a motion for summary judgment. The trial court consolidated the Hampshire and Primrose suits and granted summary judgment in favor of Amelia Little League. The Primroses and Hampshires now challenge the summary judgment on appeal.[1] For purposes of brevity, we will refer to Primrose and Hampshire collectively as "Primrose."

The summary judgment standard is well established. The movant must show there are no genuine issues of material fact and he is entitled to judgment as a matter of law. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). In determining whether summary judgment is proper, we must consider all the evidence in the light most favorable to the non-movant and resolve doubts in his favor. *Id.* Summary judgment for a defendant is proper if the defendant disproves at least one element of each of the plaintiff's claims or establishes all elements of an affirmative defense to each claim. *See American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997).

The facts as alleged by both petitions are as follows. The Lumberton All Star team ("Lumberton team" or "Lumberton players") was involved in a baseball play-off game against the Amelia All Star team ("Amelia team" or "Amelia players"). Larry Primrose II and Chad Hampshire were players for the Lumberton team. After the conclusion of the game, while the players were gathered in the parking lot, players of the Amelia team rushed at the Lumberton players with bats and other objects and began swinging these objects at members of the Lumberton team. Larry was struck in the knee and, as a result, suffered personal injuries. Chad was

---

1. The summary judgment order did not explicitly dispose of Amelia Little League's contribution and indemnity claims against Lumberton Little League. However, the summary judgment order appears to be final, as evidenced by the inclusion of language disposing of all of plaintiffs' causes of action. Therefore, we consider the judgment final for purposes of appeal. *See Mafrige v. Ross,* 866 S.W.2d 590 (Tex.1993).

struck in the head causing a concussion which required medical treatment.

In the first point of error, Primrose states the trial court erred in granting summary judgment because Amelia Little League is liable for the actions of the Amelia players. Citing *Otis Engineering Corp. v. Clark,* 668 S.W.2d 307 (Tex.1983), Primrose argues a "certain relationship" existed between the Amelia Little League organization and the Amelia team that imposed a duty of reasonable care as a matter of law.

"Generally, there is no duty to control the conduct of third persons." *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990) (citing *Otis,* 668 S.W.2d at 309). However, this general rule is not applicable "when a special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct." *Id.* The Texas Supreme Court has announced these relationships to include those "between employer and employee, parent and child, and independent contractor and contractee under special circumstances." *Id.* We also note that the Supreme Court has never extended *Otis Engineering* beyond the employer-employee context. *See Van Horn v. Chambers,* 970 S.W.2d 542, 546 (Tex.), *cert. denied,* —— U.S. ——, 119 S.Ct. 546, 142 L.Ed.2d 454 (1998). We conclude the relationship between Amelia Little League and the Amelia team and players is not within the field of special relationships as defined by Texas courts.

Also in the first point of error, Primrose argues, in the alternative, that the trial court erred in granting summary judgment because "genuine issues of material fact exist as to liability of Amelia Little League for the actions of the Amelia players." In the second point of error, Primrose argues "genuine issues of material fact exist as to negligence by Amelia Little League," and in the third point of error,

"genuine issues of material fact exist as to proximate cause."

"Under the common law, a cause of action for negligence has three elements: 1) a legal duty; 2) a breach of that duty; and 3) damages proximately resulting from the breach." *Praesel v. Johnson,* 967 S.W.2d 391, 394 (Tex.1998). The threshold question in this case is the existence of a duty, as "the existence of a legally cognizable duty is a prerequisite to all tort liability." *Graff v. Beard,* 858 S.W.2d 918, 919 (Tex.1993). The plaintiff must establish both the existence of a duty and the violation of that duty by the defendant. *See Greater Houston,* 801 S.W.2d at 525. The existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Praesel,* 967 S.W.2d at 394; *Greater Houston,* 801 S.W.2d at 525.

In *Golden Spread Council, Inc. No. 562 of Boy Scouts of America v. Akins,* the Texas Supreme Court discussed factors to consider to decide if a duty is imposed:

> In deciding whether to impose a duty, the court must balance several interrelated factors. We must weigh the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. We have also emphasized other factors, including whether one party had superior knowledge of the risk or a right to control the actor who caused the harm.

926 S.W.2d 287, 289–90 (Tex.1996) (citations omitted). Of these factors, "foreseeability of the risk is 'the foremost and dominant consideration.'" *Greater Houston,* 801 S.W.2d at 525. However, "foreseeability alone is not sufficient to justify the imposition of a duty." *Golden Spread Council,* 926 S.W.2d at 290–91; *Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Tex.1994).

Primrose argues the incident resulting in injuries to the boys was foreseeable to

Amelia Little League, that it was not an isolated, after-game event, but a circumstance developing and escalating during the game. The affidavit of Bobby Hampshire, the Lumberton team manager, which was attached to Primrose's response, shows: (1) the Amelia players made threats, slurs, and used "rowdy language" towards the Lumberton players; (2) these comments were frequent and increased as the game progressed; (3) Mr. Hampshire spoke with the home plate umpire several times during the game requesting that Amelia's coaches and manager take action; and (4) at the conclusion of the game, Mr. Hampshire spoke with the Amelia team manager requesting him to take action to control the conduct of the Amelia players.[2]

Amelia Little League's summary judgment evidence consisted of an affidavit of Norm Townsend, the president of the Amelia Little League organization and tournament director. In his affidavit, Townsend stated, "There was nothing unusual about the game." Although he admitted he had "heard discussions about racial slurs made by Lumberton players toward Amelia players," he stated that no one came to him prior to the fight to tell him there would be a problem in the parking lot.

The evidence shows that Amelia Little League did not have direct control over the players' actions, nor did it have superior knowledge of the risk of a possible altercation. Norm Townsend averred in his affidavit that he was not informed of the possibility of a fight. The summary judgment evidence also established that the members of the Amelia team and their parents were neither employees nor agents of the Amelia Little League at the time of the fight. The players were not paid to play on the team and they do not transact business for the Amelia Little League organization. This evidence was not refuted.

The imposition of placing a duty upon a little league baseball organization to protect others from the intentional acts of a third party would be an extension of the law as well as an excessive burden. While Primrose's summary judgment evidence established that the Amelia team managers and coaches were notified of the escalating tension between the players, the evidence failed to establish that the managers or coaches of the Amelia team were representatives of the Amelia Little League organization. Conversely, Amelia Little League's President Mr. Townsend averred there was nothing unusual about the game and he did not have prior notice of the possibility of an ensuing altercation. While we recognize that the conduct of the players cannot be condoned and that such actions are not within the true spirit of the . competitive nature of the sport, we nonetheless refuse to extend liability to Amelia Little League. It is also important to note that the attack took place in the parking lot, after the conclusion of the game, as the attendees were leaving. This factor further attenuates Primrose's arguments and supports our refusal to extend liability to the Amelia Little League organization.

From the facts in question, we conclude that Primrose did not establish the existence of a duty. *See Greater Houston,* 801 S.W.2d at 525. Primrose's three points of error are overruled and the judgment of the trial court is affirmed. Primrose does not challenge the trial court's grant of summary judgment on the claims of gross

---

2. Primrose also quotes excerpts from the deposition testimony of Larry Primrose, Chad Hampshire, and Bobby Hampshire. Unfortunately, we cannot consider this testimony because, from the record before us, it appears the deposition testimony was never filed with the trial court, nor was it attached to the motion for summary judgment or response, or referenced therein. *See* TEX.R. CIV. P. 166a(c);

*Hendricks v. Thornton,* 973 S.W.2d 348, 354 (Tex.App.—Beaumont 1998, pet. filed) ("In our review of the points of error regarding ... motions for summary judgment, we ... consider the pleadings, deposition excerpts, affidavits, and other evidence on file with the court, including those in other summary judgment motions, as long as they are referenced in the summary judgment motion at issue.")

negligence, malice or fraud. As a result, the summary judgment granted in favor of Amelia Little League on these claims is also affirmed. *See Allright, Inc. v. Pearson,* 735 S.W.2d 240 (Tex.1987).

Amelia Little League asks us to reconsider our written order of August 21, 1997 regarding the cost bond of this appeal; we decline to do so. Because we affirm the court's judgment, we do not address Amelia Little League's remaining reply-points as such is not necessary for the disposition of this appeal. *See* Tex.R.App. P. 47.1.

AFFIRMED.

BURGESS, Justice, concurring.

I concur in the result. The majority, in dicta, seems to espouse some public policy doctrine in their "refusal to extend liability to the Amelia Little League organization." I do not believe this is necessary or sound. Premises owners can indeed be liable for the intentional acts of third parties in certain circumstances. *See Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992); *El Chico Corp. v. Poole,* 732 S.W.2d 306, 314 (Tex.1987); *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 550 (Tex.1985); *S & A Beverage Co. of Beaumont, No. 2 v. DeRouen,* 753 S.W.2d 507, 511 (Tex.App.— Beaumont 1988, writ denied); Restatement (Second) of Torts § 448 (1965).